1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
8          EASTERN DISTRICT OF WASHINGTON

9  JEFFREY L. HAINES,              )
                                   )   No. CV-06-0257-CI
10         Plaintiff,              )
                                   )   ORDER GRANTING DEFENDANT'S
11  v.                             )   MOTION FOR SUMMARY JUDGMENT
                                   )   AND DENYING PLAINTIFF'S
12  MICHAEL J. ASTRUE,[1]          )   MOTION FOR SUMMARY JUDGMENT
    Commissioner of Social         )
13  Security,                      )
                                   )
14         Defendant.              )
                                   )
15                                 )
                                   )
16  _____)

17      BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct.

18  Rec. 12, 14.)  Attorney Lora Stover represents Plaintiff; Assistant

19  United States Attorney Pamela J. DeRusha and Special Assistant

20  United States Attorney Thomas M. Elsberry represent Defendant.  The

21  parties have consented to proceed before a magistrate judge.  (Ct.

22  Rec. 6.)  After reviewing the administrative record and briefs filed

23  _____

24      [1]As of February 12, 2007, Michael J. Astrue became Commissioner

25  of Social Security.  Pursuant to FED. R. CIV. P. 25(d)(1),

26  Commissioner Michael J. Astrue should be substituted as Defendant,

27  and this lawsuit proceeds without further action by the parties. 42

28  U.S.C. § 405 (g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

### JURISDICTION

On January 24, 2003, Plaintiff Jeffery L. Haines (Plaintiff) applied for Social Security Income (SSI) benefits.  (Tr. 65-67.) Plaintiff alleged disability due to chronic pain and numbness in his upper back, neck, and arms, with an onset date of March 15, 2000. (Tr. 83.)  Benefits were denied initially and on reconsideration. (Tr. 37-41, 43-45.)   Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Mary Bennett Reed on June 7, 2005.  (Tr. 643.)  Plaintiff, who was represented by counsel, testified.  (Id.) Vocational Expert Daniel R. McKinney also testified.  (Id.) The ALJ denied benefits and the Appeals Council denied review.  (Tr. 7-9, 16-18.)  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.  Plaintiff was born on August 11, 1967, and was 37 years old at the time of the hearing. (Tr. 651.)  He had past work experience as a landscaper, cook, book binder, assembler, electrician, cashier, and custodian.  (Tr. 119.) At the time of his application, he was married and lived with his spouse, their two children, and a step-child.  (Tr. 407.)  At the time of the hearing, he had divorced and remarried, and resided with his spouse, their daughter, a step-daughter, and a step-son.  (Tr. 650.) He reported he had served in the military after dropping out of high school.  (Tr. 651.)  Following his discharge, he obtained

his GED, and took classes at community college. (Id.)

**ADMINISTRATIVE DECISION**

At step one, ALJ Reed found Plaintiff had not engaged in substantial gainful activity since the onset of disability. (Tr. 20, 28.) At step two, she found Plaintiff had severe impairments of degenerative disk disease of his cervical spine post-fusion, mild thoracic scoliosis, narcotic dependence, dysthymia, and anxiety disorder. (Tr. 24, 28.) At step three, she found that these impairments do not meet or equal one of the listed impairments. (Id.) ALJ Reed found Plaintiff's allegations not credible. (Tr. 25.) At step four she found Plaintiff had

> [T]he following residual function capacity: He can do light work, with no lifting above shoulder level, no climbing of ladders, only occasional climbing of stairs and ramps, reaching forward, working above his waist, operating hand controls, or doing forceful gripping, and no exposure to dangerous machinery. He also should not have direct contact with the general public, or work directly with co-workers.

(Tr. 28.) Based on this, she found Plaintiff was able to perform his past relevant work as an injection mold operator. (Tr. 27, 28.) In the alternative, ALJ Reed proceeded to step five and found Plaintiff was a younger individual, with a high-school equivalent education and "no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case." (Tr. 28-29.) She determined Plaintiff had the residual functional capacity "to perform a significant range of light work." (Tr. 29.) Based on this capacity she found that there are a "significant number of jobs in the national economy that he could perform," and that Plaintiff was not under a disability as defined in the Social Security Act, at any time through the date of the decision. (Id.)

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

1    In evaluating whether a claimant suffers from a
2  disability, an ALJ must apply a five-step sequential
   inquiry addressing both components of the definition,
3  until a question is answered affirmatively or negatively
   in such a way that an ultimate determination can be made.
4  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  "The
   claimant bears the burden of proving that [s]he is
5  disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.
   1999).  This requires the presentation of "complete and
6  detailed objective medical reports of h[is] condition from
   licensed medical professionals." *Id*. (citing 20 C.F.R. §§
7  404.1512(a)-(b), 404.1513(d)).

8       It is the role of the trier of fact, not this court, to resolve

9  conflicts in evidence. *Richardson v. Perales,* 402 U.S. 389, 400

10 (1971).  If evidence supports more than one rational interpretation,

11 the court may not substitute its judgment for that of the

12 Commissioner.  *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749

13 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported

14 by substantial evidence will still be set aside if the proper legal

15 standards were not applied in weighing the evidence and making the

16 decision.  *Brawner v. Secretary of Health and Human Services*, 839

17 F.2d 432, 433 (9th Cir. 1988).  If there is substantial evidence to

18 support the administrative findings, or if there is conflicting

19 evidence that will support a finding of either disability or non-

20 disability, the finding of the Commissioner is conclusive. *Sprague*

21 *v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

22                                **ISSUES**

23     The question is whether the ALJ's decision is supported by

24 substantial evidence and free of legal error.  Plaintiff argues the

25 ALJ erred when she (1) failed to request that an orthopedist

26 participate; (2) failed to request that a psychologist participate;

27 (3) improperly rejected the treating physician's testimony; (4)

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

failed to consider Plaintiff's pain complaints in light of his mental impairments; (5) improperly assessed Plaintiff's credibility; and (6) improperly assessed the residual functional capacity. Plaintiff also asserts the ALJ's hypothetical to the vocational expert was incomplete. (Ct. Rec. 11.)

**DISCUSSION**

**A.   Duty to Develop the Record**

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to all for proper evaluation of evidence." *Mayes v. Massanari*, 276 F.3d 453, 4509-60 (9th Cir 2001), citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Plaintiff alleges that ALJ Reed should have requested the participation of medical advisors, specifically an orthopedist and a psychologist, in light of medical evidence of orthopedic and mental impairments.

The record includes reports from an orthopedist, two psychiatrists and a mental health counselor. In addition to several reports from multiple doctors regarding the Plaintiff's orthopedic impairments, the record includes a report from an orthopedist, Dr. G. W. Bagby, M.D. He opined in two separate evaluations that the Plaintiff was able to perform light work. Though the orthopedic evidence was voluminous, it was neither ambiguous, nor inadequate.

ALJ Reed reviewed several psychological evaluations, performed by mental health counselors and psychiatrists. Plaintiff was evaluated by Dr. David Grubb, M.D., who diagnosed possible chronic pain syndrome, anxiety disorder, marijuana poly-substance abuse,

mixed personality disorder, and a GAF of 55-65.[2] (Tr. 298). A mental health counselor at Deaconess Pain Clinic diagnosed pain disorder, dysthymic disorder, cannabis dependence, and a GAF of 35. (Tr. 408). Psychiatrist Dr. Tim Stoddard, M.D., diagnosed dysthymia, generalized anxiety disorder, marijuana abuse, and a GAF of 59. (Tr. 428) Six months later, Dr. Stoddard reported that the Plaintiff had improved with a GAF of 64. (Tr. 429, 439.) Family Services Spokane mental health records indicate Plaintiff reported he was "doing really well" and decided to discontinue counseling for anxiety and anger. (Tr. 573.) Additionally, in a Mental Residual Functional Capacity Assessment, reviewing physician Eugene Kester, M.D., found Plaintiff's dysthymia and generalized anxiety caused moderate limitations in his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday without interruption from psychologically based symptoms, and to interact

---

[2]A Global Assessment of Functioning score of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A GAF score of 61-70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, and has some meaningful interpersonal relationships. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Ed. *(DSM-IV)*, at 32 (1995).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

1  appropriately with the general public. (Tr. 445-447, 4357-67.) The
2  diagnoses by acceptable medical sources are consistent; the record
3  is neither ambiguous nor inadequate. Thus, ALJ Reed was not legally
4  required to seek a medical advisor regarding Plaintiff's
5  psychological impairments.

6  **B.   Medical Opinions**

7      Plaintiff argues the ALJ's determination is not supported by
8  substantial evidence because she improperly evaluated the medical
9  opinions.  The record includes, treatment notes from physicians J.
10  Allan Maddox, M.D.; Kathleen Meyers, M.D.; Jeff O'Connor, M.D.;
11  Robert Corbett, M.D.; and Michael Sikora, M.D.  Also included are
12  hospital records from emergency room visits; physical therapy
13  records; evaluations from neurologists, an orthopedist,
14  psychologists, and radiologists; evaluations from non-examining
15  agency physicians and medical experts; as well as evaluations from
16  other sources.

17      In disability proceedings, a treating or examining physician's
18  opinion is given more weight than that of a non-examining physician.
19  *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004).  If a
20  treating or examining physician's opinion is not contradicted, it
21  can be rejected only with "clear and convincing" reasons. *Lester v.*
22  *Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If contradicted, the ALJ
23  may reject the opinion if she states specific, legitimate reasons
24  that are supported by substantial evidence. *See Flaten v. Secretary*
25  *of Health and Human Services*, 44 F.3d 1453, 1463 (9th Cir. 1995).

26      Historically, the courts have recognized conflicting medical
27  evidence, the absence of regular medical treatment during the
28  alleged period of disability, and the lack of medical support for

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

doctors' reports based substantially on a Plaintiff's subjective complaints, as specific, legitimate reasons for disregarding an examining physician's opinion. *See Flaten*, 44 F.3d at 1463-64; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Agency psychologists reviewed Plaintiff's records in March and May 2004. (Tr. 122, 261.) "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the Social Security Act." *Social Security Ruling (SSR)* 96-6p. Their findings of fact must be treated as expert opinion evidence of non-examining sources by the ALJ, who can give weight to these opinions only insofar as they are supported by evidence in the case record.  The ALJ cannot ignore these opinions and must explain the weight given. *Id.*

ALJ Reed properly rejected Plaintiff's treating physician's opinion that Plaintiff was unable to work.  Medical records indicate Dr. Sikora treated Plaintiff from January to May 2005. (Tr. 540-57).  Several examining doctors contradicted Dr. Sikora's conclusion that Plaintiff was unemployable, opining that Plaintiff was capable of activities meeting the definition of "light" work. (Tr. 270-73, 304, 447, 450-54, 486-89, 503.)  ALJ Reed provided legitimate and specific reasons, supported by the record, for rejecting Dr. Sikora's opinion.   First, Dr. Sikora's reports contain inconsistencies. (Tr. 543, 544, 548.)  Second, the record contained evidence of drug seeking behavior. (Tr. 368.)  Lastly, to the extent that Dr. Sikora's opinion was based on Plaintiff's subjective complaints of pain it was accorded no weight, because ALJ Reed found

1  Plaintiff was not credible. (Tr. 25.)

2       Regarding Plaintiff's reference to Dr. Kester's evaluation,

3  (Ct. Rec. 11 at 10), the ALJ specifically adopted Dr. Kester's

4  opinion that Plaintiff should not work directly with others. (Tr.

5  26.) Since she adopted his opinion, she need not provide rationale

6  for rejecting it.

7  **C.   Credibility of Plaintiff's Pain Testimony**

8       "An ALJ must provide specific and cogent reasons for rejecting

9  a claimant's subjective complaints, and in the absence of

10 affirmative evidence of malingering, the ALJ's reasons must be clear

11 and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d

12 595, 599 (9th Cir. 1999). Furthermore, "the ALJ must specifically

13 identify the testimony she or he finds not to be credible and must

14 explain what evidence undermines the testimony." *Holohan v.*

15 *Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citation omitted).

16 The following factors may be considered: (1) the claimant's

17 reputation for truthfulness; (2) inconsistencies in the claimant's

18 testimony or between his testimony and his conduct; (3) claimant's

19 daily living activities; (4) claimant's work record; and (5)

20 testimony from physicians or third parties concerning the nature,

21 severity, and effect of claimant's condition. *Thomas v. Barnhart*,

22 278 F.3d 947, 958 (9th Cir. 2002). "[O]nce the claimant produces

23 objective medical evidence of an underlying impairment, an

24 adjudicator may not reject a claimant's subjective complaints based

25 solely on a lack of objective medical evidence to fully corroborate

26 the alleged severity of [disabling symptoms]." *Bunnell v. Sullivan*,

27 947 F.2d 341, 345 (9th Cir. 1991).

28

ALJ Reed cited specific inconsistences in the record supporting her finding that the Plaintiff was not credible. (Tr. 25.) Specifically, she noted discrepancies in his self reports related to the length of his army service, educational background, work history since 1990, and drug use. (Id., *see also* Tr. 684-85.) Additionally, she indicated that his reported daily activities did not comport with his complaints of disabling symptoms and limitations. (Tr. 25.) Further, the record showed possible drug seeking behavior. (Id.) The detailed and specific analysis supports ALJ Reed's finding that the Plaintiff was not credible with "clear and convincing" evidence.

**D.   Residual Functional Capacity (RFC)**

Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support the ALJ's conclusion. *SSR* 82-62. This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e). These findings must be based on the evidence in the record and must be developed and fully explained in the disability decision. As the Ninth Circuit stated, "[t]his requires specific findings" sufficient "to insure that the claimant really can perform his past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001).

The ALJ must assess Plaintiff's ability to perform each of the seven strength demands (sitting, standing, walking, lifting, carrying, pushing, and pulling); discuss his ability to perform sustained work activities in an ordinary work setting on a regular

1  and continuing basis; and carefully compare his restrictions with
2  exertional demands of sedentary work as defined by the regulations.
3  *SSR* 96-8p.

4      ALJ Reed made specific findings regarding Plaintiff's RFC which
5  was supported by substantial evidence. (Tr. 25-26.) Except for the
6  Plaintiff and Dr. Sikora, medical sources supported ALJ Reed's
7  finding that the Plaintiff was not totally disabled. (Tr. 270-73,
8  304, 447, 450-54, 486-89, 503.) As discussed above, ALJ Reed's
9  findings that the Plaintiff was not credible and rejection of Dr.
10 Sikora's opinion were proper. Once these two sources were properly
11 discredited, the remaining evidence unambiguously supports ALJ
12 Reed's determination. Opinions from physicians employed by the
13 State Disability Determination Services support a finding of not
14 disabled. (Tr. 269-73, 302-04, 306-18, 417, 457-69, 471, 485-90.)
15 In addition, the opinion of Dr. Bagby, the physical capacity
16 evaluation at St. Lukes, and the Plaintiff's activities of daily
17 living support her conclusions that the Plaintiff is able to perform
18 light work. (Tr. 500, 503.) Plaintiff argues that ALJ Reed
19 neglected to consider limitations including physical stamina, side
20 effects of medication, and limitations from pain complaints. (Ct.
21 Rec. 11 at 11.) However, the weight given each of these complaints
22 depends on crediting Plaintiff's properly discounted testimony;
23 thus, they were properly considered and rejected. (Tr. 25.)

24     Substantial evidence also supports ALJ Reed's RFC determination
25 regarding Plaintiff's mental limitations. (Tr. 26.) The evidence
26 includes diagnoses including dysthymia, marijuana dependance, and
27 anxiety disorder. (Tr. 298, 457-67, 575.) Plaintiff was prescribed
28

Paxil.  (Tr. 298.)  Dr. Stoddard met with Plaintiff over the course
of several months during which he reported that Plaintiff's mood had
improved and anxiety decreased with the medication.  (Tr. 429.)
Further, he indicated that Plaintiff was alert and oriented.  (Tr.
430.)  The Plaintiff's testimony supports this as well; he indicated
that he quit taking medication for depression or anxiety because he
felt he did not need it.  (Tr. 665.)  Additionally, he said that
except for childhood, he has not had difficulties associated with
depression or anxiety.  (Tr. 666.)  Dr. Eugene Kester, M.D., opined
Plaintiff "will likely have periods of reduced concentration,
persistence and pace."  (Tr. 447.)  AlJ Reed addressed this opinion.
She reasoned that, "restricting the Plaintiff to light work will
reduce the interference of pain complaints and limiting the
Plaintiff to unskilled work, which by definition is simple work,
will negate any additional limits on attention, concentration or
pace."  (Tr. 26.)  In addition, she noted that Dr. Stoddard found
Plaintiff to be pleasant, cooperative, alert, and oriented. (Id.)
Further, she accepted the opinions regarding his mental limitations.
Dr. Edward T. Beaty, Ph.D., and Dr. Kester opined that the Plaintiff
should only maintain superficial contacts with co-workers and the
general public.  (Tr. 304, 447.)  In her RFC findings, ALJ Reed
determined that the Plaintiff should not have direct contact with
the general public, or work directly with co-workers.  (Tr. 28.)

The ALJ's RFC is supported by substantial evidence.  The
hypothetical propounded to the vocational expert properly included
the limitations found by the ALJ.  (Tr. 676-77.)  Therefore,
Plaintiff's assertion that the ALJ's hypothetical was incomplete is

1  without merit.

2  **CONCLUSION**

3      ALJ Reed's determination that Plaintiff is under a disability

4  is supported by substantial evidence and free of legal error.

5  Accordingly,

6      **IT IS ORDERED:**

7      1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12)** is

8  **DENIED;**

9      2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 14)** is

10 **GRANTED;**

11     The District Court Executive is directed to file this Order and

12 provide a copy to counsel for Plaintiff and Defendant. Judgment

13 shall be entered for **DEFENDANT** and the file shall be **CLOSED**.

14     DATED May 18, 2007.

15

16          _____S/ CYNTHIA IMBROGNO_____

17          UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14